[No. 6622.   Decided March 1, 1907.]

THE STATE OF WASHINGTON, on the Relation of M. L. Potter et al., Appellants, v. KING COUNTY et al., Respondents.[1]

COUNTIES—COUNTY BONDS—PURPOSE—IN AID OF SHIP CANAL—. LOAN OF CREDIT. A county has no power to issue its negotiable bonds in aid of the acquisition by the United States of a completed ship canal in said county, payable to the contractor upon completion of the canal and its acceptance by the government; since Const., art. 8, § 7, prohibits a county from giving any money, or loaning its credit, to or in aid of any individual, and the power, if any, to issue bonds in aid of the Federal government cannot be inferred from its general grant of power to incur indebtedness.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 21, 1906, upon sustaining demurrers to the complaints, dismissing an action brought by taxpayers of a county to enjoin the issuance of bonds in aid of public improvements. Reversed.

[1]Reported in 88 Pac. 935.

*Shepard & Flett,* for appellants, contended, *inter alia,* that
King county is a municipal corporation. Dillon, Mun. Corp.
(4th ed.), §§ 21, 54; Cooley, Const. Lim. (6th ed.), p. 227.
Its authority to raise money for ordinary purposes by taxa-
tion must be given by express statute or by necessary implica-
tion from the powers conferred. Dillon, Mun. Corp. (4th
ed.), §§ 89, 90, 91, note 2, page 148. Even for ordinary
purposes it cannot issue its negotiable bonds in payment of a
debt without express authority. Abbott, Mun. Corp. § 170;
Dillon, Mun. Corp. (4th ed.), § 507a. This municipal aid
is an extraordinary purpose. Dillon, Mun. Corp. (4th ed.),
§§ 153-164; *Yesler v. Seattle,* 1 Wash. 308, 25 Pac. 1014;
*Cowdrey v. Caneadea,* 16 Fed. 532. Authority to levy taxes
for such purposes and to issue negotiable bonds therefor must
be given by express act of the legislature and cannot exist by
implication. Dillon, Mun. Corp. (4th ed.), §§ 161, 163,
507a, 542, 550; 20 Am. & Eng. Ency. Law (2d ed.), p.
1097, note 3; Id. p. 1098, paragraph 3 and notes; Cooley,
Const. Lim. (6th ed.), 268-274, and notes; Pierce, Railroads,
p. 87 *et seq.; Hasbrouck v. Milwaukee,* 13 Wis. 42; *State ex
rel. Marinette etc. R. Co. v. Tomahawk,* 96 Wis. 73, 71
N. W. 86; *Ottawa v. Carey,* 108 U. S. 110, 2 Sup. Ct. 361,
27 L. Ed. 669; *Ogden v. County of Daviess,* 102 U. S. 634,
26 L. Ed. 263; *Wells v. Supervisors,* 102 U. S. 625, 26
L. Ed. 122; *Kelley v. Milan,* 127 U. S. 139, 8 Sup. Ct. 1101,
32 L. Ed. 77; *Norton v. Dyersberg,* 127 U. S. 160, 8 Sup. Ct.
1111, 32 L. Ed. 85; *Concord v. Robinson,* 121 U. S. 165, 7
Sup. Ct. 937, 30 L. Ed. 885; *Anthony v. Jasper County,* 101
U. S. 693, 25 L. Ed. 1005; *Claiborne County v. Brooks,* 111
U. S. 400, 4 Sup. Ct. 489, 28 L. Ed. 470; *McClure v. Oxford,*
94 U. S. 429, 24 L. Ed. 129; *Oregon R. & Nav. Co. v. Oregon
R. Co.,* 130 U. S. 1, 9 Sup. Ct. 409, 32 L. Ed. 837; *Dixon
County v. Field,* 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed.
360; *Katzenberger v. Aberdeen,* 16 Fed. 745; *Scott v. Shreve-
port,* 20 Fed. 714; *Cantillon v. Dubuque etc. R. Co.,* 78 Iowa
48, 42 N. W. 613, 5 L. R. A. 726, and note; *Welch v. Post,*

99 Ill. 471; *Pitzman v. Freeburg*, 92 Ill. 111; *Bissell v. Kankakee*, 64 Ill. 249, 16 Am. Rep. 554; *Mather v. Ottawa*, 114 Ill. 659, 3 N. E. 216; *Board of Com'rs, Delaware Co. v. McClintock*, 51 Ind. 325; *La Fayette v. Cox*, 5 Ind. 38; *Williamson v. Keokuk*, 44 Iowa 88; *Clark v. Des Moines*, 19 Iowa 199, 87 Am. Dec. 423, *Leavenworth etc. R. Co. v. Com'rs of Douglas County*, 18 Kan. 169.

*Kenneth Mackintosh* and *Ernest B. Herald*, for respondents, cited: *Lancey v. King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817; *Burr v. Carbondale*, 76 Ill. 455; *County of Mobile v. Kimball*, 102 U. S. 691, 26 L. Ed. 238; *Folsom v. Township Ninety-six*, 159 U. S. 611, 16 Sup. Ct. 174, 40 L. Ed. 278; *Atlantic Trust Co. v. Darlington*, 63 Fed. 76; *Hasbrouck v. Milwaukee*, 13 Wis. 42; *Goddin v. Crump*, 8 Leigh 120; *Stockton v. Powell*, 29 Fla. 1, 10 South. 688, 15 L. R. A. 42.

RUDKIN, J.—By the act of June 11, 1906, the consent of Congress was granted to James A. Moore, or his assigns, to construct a ship canal along the government right of way, connecting the waters of Puget Sound with Lake Washington, subject to all the provisions and requirements of said act. 34 U. S. Statutes at Large, p. 231. After the passage and approval of this act, the defendant Moore, proposed to the board of county commissioners of King county that, if the county would aid in the acquisition by the United States of the completed canal, and vote and issue, for county purposes, its negotiable coupon bonds, to the amount of $500,000, made payable to himself or bearer, and place the same in escrow, conditioned that such bonds, or cash to the amount of the principal thereof, should be delivered to him or his order, upon the full completion of said canal, and the approval and acceptance thereof by the United States, in accordance with the terms of the act of Congress, he would forthwith undertake the construction of the canal, and do

. and perform all things necessary to fully complete the same. On the 10th day of August, 1906, the board of county commissioners adopted a resolution, reciting the above proposal, calling a special election, and submitting to the voters of King county,

"The question as to whether the county commissioners should be authorized to issue the negotiable coupon bonds of said county, to the amount of $500,000 in denominations of one thousand dollars ($1,000) each, payable to James A. Moore or bearer, twenty years after date of issue, with interest at the rate of four per cent per annum, payable annually; said bonds to be deposited in escrow with the National Bank of Commerce of Seattle, King county, Washington, conditioned that said bonds, or cash equal to the principal thereof, at the option of the county commissioners, shall be delivered to the said Moore, or his order, upon the full completion and acceptance of said canal, in accordance with the provisions of said act of Congress, and any act or acts of Congress amendatory thereof, and as in this resolution set forth, said completion and acceptance to be evidenced by a certificate to that effect by the government engineer in charge, and the secretary of war, that the waters of Lake Washington have been lowered not less than seven feet from their present mean level: *Provided*, That if the commissioners shall elect to deliver said bonds in the manner aforesaid, then all accumulated interest from date of issue to date of such delivery shall be credited thereon."

A special election was held pursuant to this resolution on the 12th day of September, 1906, and more than three-fifths of the voters voting thereat, voted in favor of the bond issue. This action was thereupon brought by certain taxpayers of the county, against the board of county commissioners, the county auditor, and the payee named in the proposed bonds, to enjoin their issuance. Certain other taxpayers intervened in the action and prayed for similar relief. It is unnecessary to set forth the averments of the respective complaints, further than to state that the validity of the proposed bonds was assailed on the following grounds: (1) That no power

has been conferred on King county by the legislature authorizing the issuance of the bonds for any such purpose; (2) that the issuance of the bonds will be in violation of section 7 of article 8 of the state constitution, which reads, "No county, city, town, or other municipal corporation shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association, company, or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company, or corporation;" (3) that the style and form of the bonds, and the disposition of the bonds or their proceeds, as proposed, are not in conformity with the statute. The court below sustained demurrers to the complaints, and the plaintiffs and interveners electing to stand on their pleadings and refusing to plead further, a judgment of dismissal was entered. From this judgment the present appeal is prosecuted.

"Counties, cities, and towns are municipal corporations, created by the authority of the legislature; and they derive all their powers from the source of their creation, except where the constitution of the state otherwise provides. Beyond doubt, they are, in general, made bodies politic and corporate; and are usually invested with certain subordinate legislative powers, to facilitate the due administration of their own internal affairs, and to promote the general welfare of the municipality. They have no inherent jurisdiction to make laws, or to adopt governmental regulations; nor can they exercise any other powers in that regard than such as are expressly or impliedly derived from their charters, or other statutes of the state." *Commissioners of Laramie County v. Commissioners of Albany County*, 92 U. S. 307, 23 L. Ed. 552.

The only legislative authority for the bonds in question is the act of March 22, 1890, Laws 1890, p. 37. The second and third sections of the act are as follows:

· "Sec. 2. That each and every organized, or hereafter to be organized, county of this state may contract indebtedness

for strictly county purposes in excess of the amount named in the preceding section [1½ per centum], but not exceeding in amount, together with the existing indebtedness, five (5) per centum of the taxable property, to be ascertained as provided in the preceding section, whenever three-fifths (3-5) of the voters of such county assent thereto, at an election to be held for that purpose, consistent with the general election laws, which election may be either a special or a general election.

"Sec. 3.    Whenever any debt is incurred under the provisions of sections one or two of this act, or whenever the board of commissioners of any county shall submit to the voters of this county, at an election to be held under the provisions of section two of this act, the question of issuing bonds to procure money for strictly county purposes, and three-fifths (3-5) of the voters of such county having assented thereto, and the amount of said bonds, together with the already existing county indebtedness, not exceeding five (5) per centum of the taxable property of said county, to be ascertained as provided in section two of this act, then the board of commissioners of such county is authorized and empowered to issue its negotiable bonds in the name of the county for the purposes for which such election was held."

The remaining sections provide the form and style of the bonds and the mode of their sale or exchange and redemption.

To sustain these bonds the respondents rely chiefly on the decision of this court in *Lancey v. King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817. It was there held, (1) that the act of February 12, 1895, Laws 1895, p. 3, authorizing counties to condemn land for a right of way for a ship canal projected by the Federal government, did not violate § 7 of article 8 of the constitution inhibiting counties from giving money or property or loaning their money or credit to or in aid of any individual, association, company or corporation; and (2) that indebtedness incurred in acquiring such right of way was for *strictly county purposes*, within the meaning of § 6 of article 8 of the constitution, limiting county indebtedness. From this decision the respondents

argue, that if indebtedness incurred in procuring the right of way for a ship canal, projected by the Federal government, is for strictly county purposes, so will be an indebtedness incurred in constructing a ship canal on that right of way for the Federal government; that the board of county commissioners of King county has authority to issue bonds for strictly county purposes, and therefore has authority to issue the bonds in question. This conclusion does not follow. In the *Lancey* case the court was construing a constitutional limitation on the power of the legislature, and the term *strictly county purposes* in the constitution does not necessarily mean the same thing as do the same words in the act of 1890. The act of 1890 does not authorize the incurring of indebtedness for any specific purpose, and must be read in connection with other acts defining the powers and duties of boards of county commissioners, and in the light of the well-established rule that such boards have such powers only as are expressly conferred by law or are impliedly given to enable them to carry out their express powers.

If the argument of the respondents is sound, the several boards of the county commissioners in this state have now all the power that the legislature can constitutionally confer upon them in the matter of determining the objects and purposes for which public money may be expended. With such a contention we cannot agree. The most favorable view that can be taken of the bonds in question, from the standpoint of the respondents, is that they are bonds in aid of the Federal government, for if they are not, they are manifestly in aid of a private individual and utterly void. If in aid of the Federal government, they may be free from constitutional objection, under the decision in the *Lancey* case, but they are none the less aid bonds, and, as such, are extraneous to the general objects and purposes for which county governments are created. If any question can be settled by a long line of judicial decisions, State and Federal,

it is the proposition that power to issue bonds in aid of internal improvements cannot be inferred or implied from any general grant of power to counties or other municipalities.

In *Ottawa v. Carey*, 108 U. S. 110, 2 Sup. Ct. 361, 27 L. Ed. 669, the court says:

"The charter confers all the powers usually granted to a city for the purposes of local government, but that has never been supposed of itself to authorize taxes for everything which, in the opinion of the city authorities, would 'promote the general prosperity and welfare of the municipality.' Undoubtedly the development of the water power in the rivers that traverse the city would add to the commerce and wealth of the citizens, but certainly power to govern the city does not imply power to expend the public money to make the water in the rivers available for manufacturing purposes. It is because railroads are supposed to add to the general prosperity that municipalities are given power to aid in their construction by subscriptions to capital stock or donations to the corporations engaged in their construction; but in all the vast number of cases involving such subscriptions and donations that have come before this court for adjudication since *The Commissioners of Knox County v. Aspinwall*, decided twenty-five years ago, and reported in the 21st Howard 539, it has never been supposed that the power to govern of itself implied power to make such subscriptions or such donations. On the contrary, it has been over and over again held, and as often as the question was presented, that unless this specific power was granted, all such subscriptions, and all such donations, as well as the corporate bonds issued for their payment, were absolutely void, even as against *bona fide* holders of the bonds."

In *Hasbrouck v. Milwaukee*, 13 Wis. 42, the court says:

"But whilst the power of such corporations when authorized, thus to engage in or loan their credit for the making of such improvements, has been almost invariably upheld, it has not as yet, I believe, been adjudged in any case, that they could do so without such legislative authority. No court or writer upon the subject, so far as I know, has ever claimed

or intimated that they could do so in the absence of such authority. On the other hand, the general expression of opinion has been that they are incompetent, by virtue of their ordinary powers, and without such special legislative authority, to contribute to such enterprises."

Speaking of municipal railroad aid bonds in Burroughs on Public Securities at p. 204, the author says:

"As to the state, it is a public purpose, and so is the building of a state-house, and the equipping of armies, but this could not authorize a city to issue its bonds for such purposes, without express legislative sanction."

Discussing the same question Judge Dillon says:

"The courts concur, however, with great unanimity, in holding that there is no implied authority in municipal corporations to incur debts or borrow money in order to become subscribers to the stock of railway companies and that such power must be conferred by express grant. To become stockholders in private corporations is manifestly foreign to the purposes intended to be subserved by the creation of corporate municipalities; the practice of bestowing such an abnormal power is of modern origin, and hence the rule that the authority must be specially conferred, and cannot be deduced by inference or implication from the ordinary municipal grants." Dillon, Municipal Corp. (4th ed.), § 161.

Judge Cooley says:

"Assuming that any such subscriptions or securities may be authorized, the first requisite to their validity would seem, then, to be a special legislative authority to make or issue them; an authority which does not reside in the general words in which the powers of local self-government are usually conferred, and one also which must be carefully followed by the municipality in all essential particulars or the subscription or security will be void." Cooley, Const. Lim. p. 268.

While, therefore, counties and other municipal corporations have often been authorized to incur indebtedness in aid of the state or Federal government, or in aid of commerce and navigation, or other internal improvements, and while the

validity of legislative acts authorizing the incurring of such indebtedness has generally been upheld, in the absence of some constitutional inhibition, yet, like the supreme court of the United States and the supreme court of the state of Wisconsin, we have been unable to find a single case holding that any such power exists in county or city in the absence of an express legislative grant. Many courts go further and hold that such obligations are so far foreign to the objects and purposes for which counties and other municipal corporations are created that they cannot be imposed on the inhabitants without their consent. Cooley, Const. Lim. p. 284.

The majority in favor of the bond issue was very large, but this cannot be permitted to supply the lack of power inherent in the county. Constitutional and statutory restraints on the power of counties and other municipal corporations to incur indebtedness and issue bonds are intended for the protection of minorities, for the protection of posterity, and to protect majorities against their own improvidence, and it is the duty of the courts to enforce them. We are satisfied that the proposed bond issue is without warrant or authority of law, and will not discuss the other objections urged against it.

The judgment of the court below is reversed, with directions to overrule the demurrers and proceed to judgment in accordance with this opinion.

HADLEY, C. J., FULLERTON, ROOT, CROW, MOUNT, and DUNBAR, JJ., concur.