[No. 16679.   Department Two.   January 4, 1922.]

## S. F. Woody *et al., Respondents,* v. Port of Seattle, *Appellant,* King County, *Respondent.*[1]

Municipal Corporations (22, 23)—Port Districts—Governmental Powers—Abandonment of Service. The port of Seattle, being a public corporation created by law to exercise governmental purposes, may abandon the operation of a ferry which it finds unprofitable, since it is not subject to the limitations of a private corporation which holds a ferry franchise.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 17, 1921, in favor of the plaintiffs, in an action for equitable relief, tried to the court. Reversed.

*Robinson, Murphy & Murphine,* for appellant.

*Roberts & Skeel,* for respondents.

Hovey, J.—Respondents are residents of a portion of the city of Seattle known as West Seattle and are within the limits of the appellant, Port of Seattle, the boundaries of the latter being co-extensive with those of King county. This last municipality was also made defendant in the action, but the action was dismissed as to it and no appeal has been taken from that portion of the judgment.

For many years ferries have been operated from the city of Seattle proper to West Seattle, and originally they were the only efficient means of transportation between these points, the only other communication being by way of a dirt road. These ferries were originally operated by the Oregon-Washington Ferry and Navigation Company, whose stockholders also owned the company which developed West Seattle. A system of transfers prevailed by which the passengers on the

[1]Reported in 203 Pac. 59.

street cars in the city of Seattle could obtain transportation over this ferry for one fare. The traffic on the ferry was quite heavy, both by passengers and vehicles, the expense of operation was moderate, and the ferry was operated at a profit.

In the year 1913, the appellant, Port of Seattle, submitted several propositions of public improvement to its voters by virtue of § 8165-4, Rem. Code, and a comprehensive scheme was adopted by the port officers and submitted to the voters prior to the election, of which scheme the West Seattle ferry unit was a part. The proposition relating to this unit provided for a bond issue of $200,000 to enable the port to purchase the ferry and the necessary landings. The plan was approved by the voters and the bond issue carried. The port officers sold the bonds, purchased the ferry and the landings, and operated the ferry during the years 1914 to 1919. In developing this project the officers spent the entire bond issue and some $30,000 in addition, derived from the revenues from other public utilities of the port.

Shortly after taking over the ferry, the operating traffic arrangement of the street railway expired and the port was unable to secure a renewal of it. Thereafter a street car line connecting the main city of Seattle with West Seattle was double tracked and has been elevated through the industrial district, and a street car line which originally operated only in West Seattle and carried passengers to the ferry landing was extended into the city and connected with the street railway system. The highways between the two districts, which were originally in very bad shape, have also been paved. All these circumstances have greatly reduced the amount of traffic carried on the ferry; while, on the other hand, the cost of its operation has in-

creased so that the loss in operation by the port for the years 1914 to 1919, inclusive, was over $165,000.

In October, 1918, the port entered into a charter agreement with King county for the operation of this ferry and the ferries operated by it on Lake Washington, and on July 23, 1919, the port undertook to sell to the county the property covered by the first agreement, the county undertaking to pay the bond issues. The county commenced operating the ferry under its charter agreement, and its loss for two hundred and eighty-two days, beginning January 1, 1920, was over $41,000, and it thereupon replaced the "West Seattle" with another boat, and its loss for the balance of the year was over $7,000, and the county thereupon gave notice of its intention to abandon the use of the ferry at this point. The port is without any funds to meet the deficit arising from future operation and would have to resort to a tax levy to meet it.

The trial court adjudged that the Port of Seattle maintain an efficient ferry service between the points named, and that the defendant King county is not obligated for such service, and further issued a mandatory injunction requiring the appellant, Port of Seattle, to maintain that service.

In support of the judgment of the trial court it is contended that, by the legislation and the acts of the port aforesaid, a trust has been created, not only for the application of the proceeds of the bond issue to the purchase of the property contemplated, but for the continued operation of the property, irrespective of the changed conditions which have since arisen and irrespective of the financial ability of the port to continue the operation, and that the officers of the port are without any discretion whatever in deciding to discontinue the operation of the utility. A number of

authorities are cited where the officers are using funds in violation of the plan as proposed, and a good many cases where there is a failure of service on the part of the public service corporation, but we do not consider them in point here.

The case which seems to come nearest to sustaining the contention of the respondents is *In re Wheeler,* 62 Misc. Rep. 37, 115 N. Y. Supp. 605. In that case the city of New York had taken over a franchise of a private company which granted the right to operate ferries around Manhattan Island to any of the opposite shores, and under it had been operating five certain ferries which it found to be unprofitable and was about to discontinue. The charter in question was granted in the year 1730 and superseded the rights granted under a charter of 1686, and by subsequent legislation the city was given the exclusive right of maintaining ferries. It was held in that case that the original charter was a perpetual franchise protected by the United States constitution against impairment by legislative act, and that, in spite of other legislation upon the subject, the powers of the charter were still in effect.

Another case in which the municipality was held to the fulfillment of the obligation of a charter granted to a private corporation is *Fellows v. Los Angeles,* 151 Cal. 52, 90 Pac. 137. In that case the complainant was about to be deprived of his only source of supply of water for domestic use.

We do not consider the facts of the present case as bringing it within the preceding cases. Here no obligations of a private charter are taken over, the complainants have street cars on a double track making frequent trips, and a paved road duplicating the ferry, and at most the latter is an added convenience.

Under our laws the handling of ferries is left generally to counties. Rem. Code, §§ 4998 to 5013 (P. C. §§ 2388 to 2403). In the act providing for port districts an added power to maintain ferries is given to these municipal corporations. The section mentioned prohibits the sale of the property embraced in a comprehensive scheme, but there is no provision in the act requiring the officers to continue to operate a utility.

In our opinion, a public corporation created by law to exercise governmental functions is in a different position from a private corporation, even though the latter be vested with certain public privileges and corresponding duties.

"It is not unusual for the legislature to make to a municipal corporation a more or less extensive grant respecting ferries and ferry franchises. Such a grant is not, unless otherwise expressed, a compact which cannot be impaired, but in the nature of a public law, subject to be repealed or changed, as the public interests may demand." Dillon, Municipal Corporations (5th ed.), vol. 1, § 275.

In the case of the public corporation, there is no element of profit to its shareholders. Every detail of its operation can be reviewed by the people and corrected, if desired, by the election of officers for that purpose, or by the act of the legislature, if it sees proper. We think the courts should not interfere with the discretion of the officers of this public corporation as exercised in this instance under the facts of this case.

The order and judgment appealed from will be reversed with directions to dismiss the action.

Parker, C. J., Main, Mackintosh, and Holcomb, JJ., concur.