[No. 16679.   Department Two.   January 4, 1922.]

WILLIAM RAINE *et al., Respondents and Appellants,* v.
PORT OF SEATTLE, *Appellant,* KING
COUNTY, *Respondent.*[1]

MUNICIPAL CORPORATIONS (22, 23, 26)—GOVERNMENTAL POWERS—
PORT DISTRICTS—OPERATION OF FERRIES—DELEGATION OF AUTHORITY—
DISCRETION OF OFFICERS.  Where a ferry line which the port of Seattle had been authorized by popular vote to operate was transferred by it to the county, not as a sale of the property but as a delegation of authority to operate, a mandatory injunction will not lie against either the port or the county to compel the maintenance of the service as originally inaugurated, where an alteration in service does not substantially vary the original plan.

Cross-appeals from a judgment of the superior court for King county, Ronald, J., entered March 17, 1921, in favor of the plaintiffs as against one defendant, in an action for equitable relief, tried to the court. Reversed.

*Robinson, Murphy & Murphine,* for appellant Port of Seattle.

*James B. Murphy,* for appellants Raine *et al.*

*Malcolm Douglas, Wm. Parmerlee,* and *Arthur Schramm, Jr.,* for respondent.

HOVEY, J.—This is a companion case to that of *Woody v. Port of Seattle, ante* p. 163, 203 Pac. 59, and the cases were decided by the trial court at one time and were both submitted at the same time in this court.

At the time the Port of Seattle submitted its comprehensive scheme referred to in the preceding opinion, it included a unit for a ferry system on Lake Washington connecting Leschi on the west side of the lake with Medina and Bellevue on the east side of the lake, and a bond issue of $150,000 was voted by the people for

[1]Reported in 203 Pac. 61.

that purpose. Thereafter the port equipped a ferry service which it operated at considerable loss, and its property in connection with said unit was covered by the same charter agreement and contract of sale mentioned in the *Woody* case. King county took over the operation of this ferry system and, at the time of the trial, was continuing such operation, but it has announced certain changes in the schedules which will vary the service somewhat from that formerly given, and it is claimed by the plaintiffs that, in addition to being detrimental to their interests, it is also an attempt by King county to aid the service rendered by it under its own ferries operating between Kirkland and Madison street.

In this case the trial court refused relief as against King county, and from that portion of the judgment, the original plaintiffs appeal. As against the appellant Port of Seattle the court issued a mandatory injunction requiring it to maintain "an efficient ferry service, which service shall be as reasonably good as the needs of the residents of Bellevue may require or justify, between the point at or near Leschi Park on the west shore of Lake Washington, and the point at Bellevue established by said port as the point of landing of the said Leschi ferry . . . substantially in accordance with the general plan submitted to the people of said port, and as developed and established by the said port in carrying out the said proposition, including the maintenance of the terminal points."

It appears from the evidence that two points were the eastern termini of this ferry plan. The shortest route to Leschi is Medina, but some two miles from this point and on the same side of the lake is Bellevue. There is a paved road between the places which is connected up with Kirkland, the latter being the terminus of the ferry theretofore maintained by King county.

It was contended by the county that the service they proposed to continue to give to Bellevue, while not as frequent as that formerly given, would yet be sufficient, and that they were going to supplement the service by another smaller boat.

In this case there arises the question of the validity of the sale from the port to the county, and this seems to be forbidden by a provision in § 8165-4, Rem. Code, as amended by the Laws of 1917, p. 501, which reads as follows:

"But no property which is a part of the comprehensive scheme or modification thereof, adopted by vote of the people, shall be sold or disposed of without the assent of a majority of the voters voting on the question of such proposed sale or disposition at a general or special election . . ."

Admitting the illegality of this transfer as a completed sale, we believe the port was within its powers in delegating the operation of the ferries to some one else. They are expressly given the power to lease in the same section, and so long as the use of the property is not changed from the purpose for which the bonds were voted, and in view of the fact that it is being operated by the public body vested by law with the power to operate and control all ferries, we do not think that the respondents can complain. Nor do we think that a variation in the schedules or hours of service from that originally installed by the port is beyond the power of the port officers to exercise their discretion, either directly or through the agency of others.

The operation of this ferry system, both by the port and the county, has also been at a very heavy loss, but as this system of transportation does not seem to be paralleled by any other, the county evidently intends to continue its operation.

As stated in the *Woody* case, there is no provision in

the act requiring the continued operation of this utility, and neither is there any provision governing the manner of its operation, and so long as the manner of operation is not substantially varied from the plan originally submitted, the persons interested must rely upon political action, rather than proceedings through the courts. We conclude that the evidence did not justify the action of the court in this instance.

The judgment will be reversed, with directions to dismiss the action.

PARKER, C. J., MAIN, MACKINTOSH, and HOLCOMB, JJ., concur.