PIERCE COUNTY, *Appellant*, v. WASHINGTON NAVIGATION COMPANY, *Respondent*.[1]

*Bertil E. Johnson* and *D. D. Schneider*, for appellant.
*Charles T. Peterson*, for respondent.

BEALS, C. J.—This controversy concerns the amount which Pierce county, the plaintiff herein, is entitled to receive from the defendant, the owner and operator of ferries under a contract between the parties.

In its complaint, the county alleged that, during the month of July, 1926, the county commissioners entered into a written agreement with one Skansie whereby he was to operate certain ferries and pay the county for the privilege "five per cent" of the "gross earnings." The complaint further alleged that, with the consent of the county, Mr. Skansie assigned his rights to the defendant in this action, which for some time has operated, and still continues to operate, the ferries re-

[1]Reported in 27 P. (2d) 569.

ferred to in the contract. It is further alleged that, during the month of December, 1928, the county commissioners passed the following resolution:

"WHEREAS, on July 20th, 1926, this board of county commissioners of Pierce county, Washington, entered into a contract, in writing with Mitchell Skansie of Gig Harbor, Washington, with respect to ferry service between Point Defiance and Gig Harbor, Washington, and Point Defiance and Vashon Island, which contract was thereafter, with the consent of the board of county commissioners of Pierce county, Washington, assigned by the said Mitchell Skansie to the Washington Navigation Company, a corporation, now operating under same; and

"WHEREAS, paragraph six of said contract provided as follows:

" 'It is mutually agreed between the parties hereto that the party of the second part shall receive as compensation for the services to be provided as herein set forth during the period referred to in this agreement, all receipts, fares and income arising from said ferry operation over said routes less an amount equal to five per cent of the gross earnings, which percentage of gross earnings shall be paid to Pierce county. It is agreed by the parties hereto that the party of the second part shall have the right to collect and receive said receipts and income.' and,

"WHEREAS, a controversy has arisen between Pierce county and the Washington Navigation Company as to what shall be regarded as gross earnings; and

"WHEREAS, it was the understanding of this Board, in its discussion with Mitchell Skansie at the time of entering into said contract, that certain operating expenses should be deducted from the total income to arrive at the gross earnings, and

"WHEREAS, the County and County Auditor of Pierce county, Washington, has received an opinion from J. A. Sorley, Prosecuting Atttorney, by D. D. Schneider, Deputy, with respect to the construction to be placed on said terms 'gross earnings,' and the Board being of the opinion and believing that the opinion of the Prosecuting Attorney is correct and for the

purpose of settling the controversy now existing between Pierce county and the Washington Navigation Company, and definitely settling and designating the rights of the parties,

"Now, THEREFORE, BE IT RESOLVED, that all payments heretofore made by the Washington Navigation Company to Pierce County, as royalties, on earnings, prior to the date hereof, shall be accepted by the county in full payment thereof, and

"BE IT FURTHER RESOLVED that the terms 'gross earnings' shall be held and construed to be and mean the entire earnings of the Washington Navigation Company, in operation of the ferries after deducting the actual operating expenses only which shall include cost of services of the crew, fuel and oil and cost of actual repairs, insurance and taxes, and shall not include depreciation or replacement or additions, nor expense for salaries or clerical hire of the corporation or other expenses of the corporation, or interest on the investment, or other miscellaneous expenses.

"Dated, this 4th day of December, A. D. 1928.

"Frederic Shaw, Chairman
"Henry Ball
"Board of County Commissioners, Pierce County, Washington;"

and that the defendant has settled with the county up to and including the year 1932 upon the basis provided for in the resolution. The complaint further sets forth that five per cent of the gross *receipts* amounts to something over thirty-four thousand dollars, and that the amount paid to the county, computed upon the basis called for by the resolution above quoted, amounts to only $15,670; that during the month of March, 1933, the board of county commissioners directed the prosecuting attorney to sue the defendant for the difference between five per cent of the gross receipts and the amount paid.

Defendant demurred to the complaint, and this demurrer having been sustained by the court, a judg-

ment dismissing the action was entered, from which plaintiff appeals.

Appellant argues that the board of county commissioners was without authority to pass its resolution of December, 1928, defining gross earnings, for the reason that the original contract of July, 1926, was clear and definite; that the meaning of the term "gross earnings" was unambiguous and not subject to construction or interpretation, and that appellant is entitled to receive from respondent a sum considerably in excess of the amount actually paid.

The terms of the December, 1928, resolution are, in this connection, significant. It is recited that a controversy has arisen between the parties as to what shall be considered "gross earnings," and that it was the understanding of the board at the time the original contract was entered into that certain operating expenses should be deducted from the total income before computing the percentage of gross earnings to be paid to the county. This goes much farther than an attempt to construe the phrase *gross earnings,* and constitutes a solemn declaration as to the intention and understanding of the parties in entering into the contract. Certainly the parties to a contract may, by mutual agreement, reform the same so that it shall speak the true intention thereof.

If the original contract itself be considered, it will be noted that, from the portion quoted in the resolution above set forth, it may well be argued that a distinction was drawn between "all receipts, fares and income arising from said ferry operation" and the gross earnings upon which the county's percentage is to be computed. If it had been intended that the county should receive a percentage of "all receipts, fares and income," it would have been very simple to have said so, but it would seem that the phrase *gross*

*earnings* was used as indicating something different from the receipts, fares and income.

It is clear that, whether considered as reducing to certainty that which was before doubtful, or as constituting a declaration of the mutual intention of the parties and a modification of the written contract to bring the same in accord with the actual agreement intended by the parties, the resolution of December, 1928, was a valid exercise of the powers vested in the county commissioners by law, and that the revenue accruing to the county under the agreement between the parties hereto has been properly computed in accordance with the contract and the resolution hereinabove quoted.

The county commissioners are vested by law with the right to conduct the county's business. Appellant's complaint does not allege fraud or arbitrary action on the part of the board. Appellant is bound by the acts of its lawfully constituted officers. *Lewis County v. Montfort,* 72 Wash. 248, 130 Pac. 115; *In re Drainage District No. 10,* 119 Wash. 8, 204 Pac. 1050.

The trial court was correct in sustaining respondent's demurrer and in dismissing the action.

The judgment appealed from is affirmed.

TOLMAN, HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.