[No. 25933. *En Banc.* August 8, 1936.]

THE STATE OF WASHINGTON, *on the Relation of Washington Navigation Company, Appellant,* v. PIERCE COUNTY *et al., Respondents.*[1]

*Charles T. Peterson,* for appellant.
*Harry H. Johnston* and *John E. Belcher,* for respondents.
*Poe, Falknor, Falknor & Emory, amicus curiae.*

ON REHEARING.

MITCHELL, J.—This controversy grows out of the operation of certain ferries by the Washington Navigation Company, in Pierce county. The case was heard originally by the court *En Banc,* and an opinion upon that hearing was filed on November 14, 1935, 184 Wash. 414, 51 P. (2d) 407.

After the opinion was filed, the Washington Navigation Company, the holder of certificates of public convenience and necessity issued pursuant to chapter 248, Laws of 1927, p. 382, Rem. Rev. Stat., §§ 10361-1, 10361-2, filed a schedule of rates, fares and charges with the department of public service of the state, to become effec-

[1]Reported in 60 P. (2d) 16.

tive January 20, 1936, on and over these ferry routes. Thereafter, on December 31, 1935, the case of *State ex rel. Scofield v. Schaaf*, was instituted to prohibit and enjoin the department of public service from exercising jurisdiction over the ferries in question. Upon the hearing of that cause *En Banc*, an opinion was filed March 3, 1936, 185 Wash. 354, 54 P. (2d) 1014, denying a writ of prohibition for the reason that the act of 1927, above referred to, gave to the department of public service of the state regulatory power and authority over the ferry routes in question, and a final judgment to that effect was entered on April 3, 1936.

In the meantime, upon petition therefor, a rehearing has been had in the present case, and upon further consideration it is decided that all of that portion of our former opinion in this case inconsistent with the opinion in *State ex rel. Scofield v. Schaaf*, *supra*, be and the same is hereby overruled, and that we adhere to the rest of the former opinion in the present case, including the stating of the account between the parties to the action.

MILLARD, C. J., MAIN, TOLMAN, BLAKE, and BEALS, JJ., concur.

STEINERT, J. (dissenting)—It is to be remembered that this is a rehearing of the case bearing the above title and number and reported in 184 Wash. 414, 51 P. (2d) 407, wherein it was held (adopting the third finding of the trial court and by further reasoning) (1) that, under the public service commission act as it stood in 1927, the board of county commissioners of Pierce county had *exclusive* jurisdiction over the operations of relator's ferries; and (2) that the contracts out of which this litigation arose were void because in contravention of Art. VIII, § 7, of the state constitution. That case was decided November 14, 1935, and, for convenience, will hereinafter be referred to as the *Washington Navigation Co.* case. Within a few months thereafter, March 3, 1936, this court, in *State ex rel. Scofield v. Schaaf*, 185 Wash. 354, 54 P. (2d) 1014, took a contrary view with reference to the exclusive jurisdiction of the county in regulatory matters and held that, under the 1927 act, the public service commission was given regulatory power and authority over relator's ferry operations; that case will hereinafter be referred to as the *Scofield* case.

As a result of a rehearing of the *Washington Navigation Co.* case, this court, in the prevailing opinion herein, now holds that all of that portion of the opinion in the case just referred to inconsistent with the opinion in the *Scofield* case is overruled. Unless the opinions in the two cases be carefully compared and analyzed, it is a little difficult to understand just what particular parts of the first opinion are to be deleted; but, as I understand it, the first ground above mentioned in the *Washington Navigation Co.* case is overruled, and the case is made to rest on the second ground, namely, that the contracts in question are void because in contra-

vention of Art. VIII, § 7, of the state constitution. If that be the conclusion of the majority, then I dissent.

The *Scofield* case, although holding that the power to regulate rates is now vested in the public service commission, appears to concede that, under the 1927 act, all contracts for the operation of ferries previously entered into by the county were validated. At any rate, such is the express provision of the statute:

". . . Provided, that nothing herein shall be construed to affect the right of any county within this state to construct, condemn, purchase, operate or maintain, itself or by contract, agreement or lease, with any person, firm or corporation, ferries or boats across or wharfs at or upon the waters within this state, including rivers and lakes and Puget Sound, provided such operation is not over the same route or between the same districts, being served by a certificate carrier, nor shall this act be construed to affect, amend or invalidate any contract entered into prior to January 15, 1927, for the operation of ferries or boats upon the waters within this state, which was entered into in good faith by any county with any person, firm or corporation. . . ." Laws of 1927, p. 382, Rem. Rev. Stat., § 10361-1.

The county, therefore, did have the right, prior to 1927, to construct, purchase, operate or maintain, directly or by *contract, agreement or lease*, ferries upon the waters within this state. The fact is, as shown in the *Washington Navigation Co.* case, that the county owned and operated these very ferries in its proprietary capacity, from 1916 to 1926. In July, 1926, it sold the ferries to the relator company and, shortly thereafter, entered into the contracts here in question for the operation of the ferries by the relator.

The provisions of those contracts are interesting, as well as important, in the determination of this case. The relator company agreed to operate ferries of a certain type and capacity for a certain number of round trips daily, in accordance with a regular schedule and at rates to be approved by the county, subject to a penalty to be imposed against the company in the sum of seventy-five dollars per day for each day that ferry service was discontinued. The excess of gross revenues, over and above a certain sum fixed in the contracts, was to be paid to the county, monthly, until the county had been reimbursed for the monthly payments which it was required to make to the company. All monthly gross receipts of the company over a specified amount were subject to participation therein by the county to the extent of five per cent. The county was to receive free transportation over all routes of the company.

Taking all these facts into consideration, and remembering that the county had formerly owned and operated the ferries in its proprietary capacity and still desired that every function, purpose and facility of the ferries should be continued for the benefit of the county and its residents, it is apparent that the sale of the ferries, followed immediately by the execution of the contracts, was simply

a change in the method of operation, with all the advantages to the county preserved. Under the contracts, there was, in effect, a joint venture by the company and the county, and it was so understood until the county, years afterwards, saw an opportunity to repudiate the contracts and recover the full amounts that it had theretofore voluntarily paid the company.

I take it that the following statement made in the *Washington Navigation Co.* case is not inconsistent with the holding in the *Scofield* case and is not overruled by the prevailing opinion herein:

"Although the contracts were void under our constitution, this court has always endeavored to hold municipalities to the same standard of right and wrong that the law imposes upon any individual. *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226, 114 Pac. 457; *Franklin County v. Carstens*, 68 Wash. 176, 122 Pac. 999; *Mallory v. Olympia*, 83 Wash. 499, 145 Pac. 627; and *Abrams v. Seattle*, 173 Wash. 495, 23 P. (2d) 869."

This, then, leaves only the question whether the contracts above referred to are indeed in contravention of Art. VIII, § 7, of the state constitution, which reads as follows:

"No county, city, town, or other municipal corporation shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association, company, or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company, or corporation."

The holding in the *Washington Navigation Co.* case, seemingly upheld in the *Scofield* case, is that the payment by the county to the company of a "subsidy" of thirty-five hundred dollars per month toward the operation of the ferries amounted to a gift. What has already been said herein should be sufficient, I think, to refute that idea. It was not a gift; it was the payment of a contractual obligation to pay for services to be rendered under the terms of the contract, in part directly to the county, and in part for the discharge of such duties as the county had theretofore assumed and for purposes which it recognized were essential.

Two cases are relied on, in the *Washington Navigation Co.* case, as supporting the holding therein: *State ex rel. Potter v. King County*, 45 Wash. 519, 88 Pac. 935; *Johns v. Wadsworth*, 80 Wash. 352, 141 Pac. 892. No additional cases are cited in the present majority opinion. Neither of the cited cases, however, bears any controlling analogy to this case. In the *Potter* case, the county attempted to issue its bonds in aid of the Federal government in the acquisition of a completed canal. In the *Johns* case, the appropriation was made to an agricultural fair association, a private corporation. In both of those cases, there was probably some indirect benefit to the residents of the county, but in neither instance was the county directly concerned, nor was it a matter in which the county had any statutory right to participate.

We have here an entirely different situation. The county not only obtained free transportation for its employees and equipment, but, what is more important, the perfected arrangement was a method through which the county transferred and rid itself, and at the same time guaranteed the continued performance, of the very duties and obligations which the county had theretofore been habitually performing and concerning which it felt obligated to make some equivalent arrangement.

I think the judgment of the trial court should be reversed, and the relief prayed for by the relator granted.

GERAGHTY, J., concurs with STEINERT, J.