[No. 9839. Department One. April 9, 1912.]

FRANKLIN COUNTY, *Appellant*, v. THOMAS CARSTENS,
*Respondent.*[1]

ESTOPPEL—AGAINST COUNTY—CONVEYANCE OF COUNTY PROPERTY—
TAX TITLES. The principle of equitable estoppel applies against a
county's asserting title to land acquired by it in a proprietary ca-
pacity at a county tax sale, where, before the running of limitations
against an action to set aside the tax deed, upon the advice of its
attorney and the existence of a controversy over the validity of the
tax deed, the county commissioners allowed the owner to "redeem"
by paying all taxes, and executed and delivered to him a quitclaim
deed, and thereby induced a *bona fide* purchaser to rely on the title
and to pay taxes for six years; although, under Rem. & Bal. Code,
§ 9272, lands acquired by a county at tax sale could only be sold and
disposed of at public sale.

EVIDENCE — PAROL EVIDENCE TO VARY WRITING — ADMISSIBILITY.
Where a county commissioners' record recited that the county
claimed title to property by virtue of a tax deed, and that it would
be for the county's best interest to relinquish all its right upon pay-
ment of the tax, parol evidence that there was a controversy as to

[1]Reported in 122 Pac. 999.

the validity of the tax deed is admissible, as it does not contradict, but only supplements the writing.

COUNTIES—COUNTY BOARD—POWERS—COMPROMISE OF DISPUTED TAX TITLE. Under Rem. & Bal. Code, § 3890, giving the county commissioners the care of county property and the power to prosecute and defend actions, the commissioners have power to compromise a controversy as to the validity of a county tax sale and deed by conveying the land to the owner on his payment of the taxes, regardless of whether suit has been commenced; and it is immaterial that the transaction was called a "redemption," which was not authorized by law.

Appeal from a judgment of the superior court for Franklin county, Holcomb, J., entered August 18, 1911, upon findings in favor of the defendant, dismissing an action to quiet title. Affirmed.

*M. L. Driscoll* (*P. F. Leonard*, of counsel), for appellant.

*John E. Ryan, Grover E. Desmond*, and *Fletcher & Evans*, for respondent.

GOSE, J.—Action to quiet title. Decree for defendant. The plaintiff has appealed.

On August 1, 1901, a general tax certificate was issued to the appellant, for the delinquent taxes against the property in controversy as well as a large amount of other property. Thereafter the appellant prosecuted a general foreclosure proceeding upon the certificate, and a decree of foreclosure was entered on the 24th day of June, 1902. On the 26th day of July, 1902, in default of bidders, the property was struck off and sold to the appellant for the taxes, penalty, interest, and costs. On August 23, the county treasurer executed and delivered to the appellant a tax deed, which was duly filed for record in the office of the county auditor on June 24, 1903. On July 8, 1903, its board of county commissioners caused an order to be entered upon its minutes, to the effect that all former owners could redeem the property from the tax sale by paying the face of the original taxes for the years 1892 and succeeding years to and includ-

ing 1902. The county treasurer thereupon, under the direction of the board, sent notice of the order to all known owners of property of the class designated in the order. On July 5, 1904, the board caused an order to be entered which recites that J. C. Helm, respondent's grantor, had made an application for a quitclaim deed to the property in controversy; that he was the original owner thereof; that the county "claims" title in virtue of the tax deed; that the applicant offers to pay the taxes assessed against the property, amounting to $407.10; that the board believed that it would be "to the best interest of the county to allow the applicant to redeem," and that the board would execute and deliver to him a quitclaim deed to the property, "relinquishing all right" the county "might" have therein in virtue of the tax deed upon payment of the amount stated. Helm then paid that amount to the county treasurer, and on July 7, the appellant conveyed the property to him by a deed of quitclaim. The deed was duly filed for record on July 15, 1904. On July 16, Helm conveyed the property to the respondent, for a recited consideration of $800, and he duly filed his deed for record on August 3 following. The property has since been regularly assessed to Helm, and the respondent has paid the taxes as follows:

"March 13, 1906,. . . . . . . . . . . . . . $6.37 for year 1905.
"March 15, 1907,. . . . . . . . . . . . . .   6.24 for year 1906.
"March 13, 1908,. . . . . . . . . . . . . .  24.63 for year 1907.
"March 15, 1909,. . . . . . . . . . . . . .  21.48 for year 1908.
"March 15, 1910,. . . . . . . . . . . . . .  82.48 for year 1909.
"March 15, 1911,. . . . . . . . . . . . . .181.83 for year 1910."

This action was commenced in April 1911. In addition to the matters stated, the answer affirmatively alleges that:

"The county commissioners found as a matter of fact and entered in their records that it was to the best interests of the county to make such settlement, there being a controversy over the matter at the time;"

that the commissioners, before entering the order permitting

redemption, consulted with the county attorney; that they made the order relying upon his advice, and that:

"The predecessor in interest of the defendant relied upon said county attorney's action and said county commissioners' action and redeemed said lands."

There are 720 lots in controversy. The preponderance of evidence, aside from the recited consideration in the respondent's deed, shows that the property had no market value at the time the appellant conveyed it to Helm.

The respondent rests his right to an affirmance of the decree upon two legal propositions: (1) That the county is estopped from asserting title, and (2) that the property was conveyed to his grantor as a compromise of a disputed and doubtful title. These contentions will be considered in their proper order.

The code, Rem. & Bal. § 9272, provides that property acquired by a county for taxes shall be subject to sale by the board of county commissioners of the county at any time after the county shall have received a deed therefor, when in the judgment of the board they deem it for the best interests of the county to sell the same; and that they may enter an order directing the county treasurer to sell the property, and that he shall thereupon proceed to notice for public sale and sell the same for cash to the highest bidder. It is conceded that this statute was not complied with.

We think the county is estopped to assert title. The respondent has paid the taxes assessed against the property for six consecutive years. In addition to this fact, the statute of limitations had not run against the right of his grantor to contest the validity of the tax deed when he paid the taxes and accepted a deed from the county. Laws 1893, p. 20, § 1; Bal. Code, § 5501. At the time the present action was commenced, the time in which to test its validity had expired by limitation. Laws 1907, p. 398, § 1; Rem. & Bal. Code, § 162. For practically seven years, the respondent has relied upon the title conveyed by the appellant to

his grantor. By its conduct, he has been lulled into a feeling of security, and has refrained from resorting to the courts for a determination of the validity of the tax deed. We think the principles of common honesty and natural justice forbid that it should now be heard to assert the inconclusiveness of the record.

The property was held by the appellant in a proprietary capacity, as distinguished from the governmental or *quasi* governmental capacity in which municipal corporations hold property such as streets, public parks, and other property, devoted to and essential to the exercise of municipal functions. We think the better rule is that, where property is held by a municipal corporation in a proprietary capacity and subject to the power of sale by the officers who assume to sell it, the principles of equitable estoppel may be invoked against it. *Spokane St. R. Co. v. Spokane Falls*, 6 Wash. 521, 33 Pac. 1072; Elliott, Municipal Corporations, § 175, p. 289; 2 Dillon, Municipal Corporations (4th ed.), § 675; *Audobon Co. v. American Emigrant Co.*, 40 Iowa 460; *Adams County v. B. & M. R. Co.*, 39 Iowa 507; *Austin v. Bremer County*, 44 Iowa 155; *Board of Sup'rs of Logan County v. Lincoln*, 81 Ill. 156; *Town of Searcy v. Yarnell*, 47 Ark. 269, 1 S. W. 319; *Moore v. Mayor etc.*, 73 N. Y. 238, 29 Am. Rep. 134. These views are not in conflict with the recent case of *Seattle v. Hinckley*, 67 Wash. 273, 121 Pac. 444. The property there in controversy was a public street. Moreover the countervailing equities in favor of the city were stronger than the equities of the parties asserting estoppel against it.

The appellant's authorities upon this question may be grouped for convenience under three general classes: (1) Where the municipal officers had no power to make the contract or execute the conveyance which was sought to be made the basis of an estoppel; (2) where the property was held in a governmental or *quasi* governmental capacity and was essential to the exercise of municipal functions; and (3)

where timely action was brought by or on behalf of the municipality. *State v. Pullman,* 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836; *Commercial Elec. Light & P. Co. v. Tacoma,* 20 Wash. 288, 55 Pac. 219, 72 Am. St. 103; *State ex rel. Spring Water Co. v. Monroe,* 40 Wash. 545, 82 Pac. 888; *Smith v. Lamping,* 27 Wash. 624, 68 Pac. 195; *Young v. State,* 19 Wash. 634, 54 Pac. 36; *Ritchie v. State,* 42 Wash. 653, 85 Pac. 417; *Chehalis County v. Hutcheson,* 21 Wash. 82, 57 Pac. 341, 75 Am. St. 818; *Paul v. Seattle,* 40 Wash. 294, 82 Pac. 601; *Mather v. King County,* 39 Wash. 693, 82 Pac. 121; *City of Uniontown v. Berry,* 24 Ky. Law 1692, 72 S. W. 295; *Childress County Land & Cattle Co. v. Baker,* 23 Tex. Civ. App. 451, 56 S. W. 756, and *Board of Directors etc. v. Fleming,* 93 Ark. 490, 125 S. W. 132, 659, fall within the first class. The distinction is forcefully stated in the *Pullman* case as follows:

"There has been a conflict of opinion on some branches of this question, but an investigation of the authorities will show, we think, that where courts have estopped municipalities from interposing the plea of *ultra vires,* and from escaping the responsibility of their acts, it has been where there has been a defect in the execution of the contracts, as in the issuance of bonds, etc., and not where there has been an absolute want of power on the part of the municipality to contract."

A like distinction is recognized in the *Monroe* case. There the court said:

"The case of *Spokane St. R. Co. v. Spokane Falls,* 6 Wash. 521, 33 Pac. 1072, is not in point. The city council had the power to grant the franchise there in controversy, in the first instance. It was a case of the defective or irregular exercise of an existing power, and not a case where the power to act in the first instance was entirely lacking."

*Board of Park Com'rs v. Taylor,* 133 Iowa 453, 108 N. W. 927; *City of Mobile v. Sullivan Timber Co.,* 129 Fed. 298, and *Detroit v. Detroit City R. Co.,* 60 Fed. 161, fall within the second class. *Arnott v. Spokane,* 6 Wash. 442, 33 Pac.

1063; *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226, and *Platter v. County of Elkhart*, 103 Ind. 360, 2 N. E. 544, fall within the third class.

In the case at bar, the appellant, both by declaration and conduct, induced the respondent to forego his right to litigate the validity of the tax title, and induced him to regularly pay the taxes upon the property for six years. It is true, the appellant has offered to repay the taxes. That, however, will not put the respondent *in statu quo*. The testimony shows that the property is now of the value of $28,000. The appellant remained silent when duty commanded it to speak, if it ever intended to speak, and it will not now be heard to assert a right which equity and good conscience forbid that it should have.

It may be said that there is no testimony tending to show that either the respondent or his grantor intended to litigate the tax title. They had that right, however, and appellant's course of conduct induced them to permit it to lapse.

We also think the second contention is sound. The resolution recites that the appellant "claimed" the property, and that upon payment of the taxes by the original owner it would execute to him a quitclaim deed "relinquishing all right" that it "might" have therein. The deed recites that "this conveyance is for the purpose of removing a cloud upon the above premises, caused by a treasurer's tax deed filed in a book by itself on June 24, 1903, with the auditor of Franklin county." Mr. Livesley, who was chairman of the board when the order was entered and the deed executed, testified that the board acted upon the advice of the county attorney. He was asked: "Mr. Livesley, at this time was there any controversy or litigation on relating to the validity of those tax deeds or tax titles which the county had at the time of this property in dispute?" and answered: "Yes, sir; it was." He was then asked: "Of which this property was a part?" and answered: "It was." Mr. Anderson, who was also a member of the board at that time, testified that

the board took advice from the county attorney. He was then asked: "Was there any controversy on at that time relating to the validity of these titles which Franklin county claimed to have acquired under the tax foreclosure of 1902?" and answered: "Yes, sir. We were advised that there was a question to the title." Mr. John J. Rudkin, who was prosecuting attorney for the appellant by appointment, and who conducted the tax foreclosure proceedings, testified as follows:

"I conducted proceedings as attorney for the county. Q. Was there any controversy or dispute at the time as to the validity of that tax sale? A. There was. Q. Between the property owners and the county? A. There was a general question as to the validity of the proceeding, as it had not been tested in the supreme court. Everybody was questioning it. Q. And the proceeding was very seriously questioned? A. Yes."

He further testified:

"The commissioners consulted with me in regard to taxes, and I informed them that I had done all I knew how to make the proceedings legal, but that it had not been tested in the supreme court and that a tax title was considered a very uncertain title from a legal standpoint."

The resolution and deed were prepared, after Mr. Rudkin's resignation, by his successor in office. This evidence was admissible. It does not vary or contradict the record, but tends to supplement it, and to show matters which, through oversight or some other cause, were not recorded. *Chippewa Bridge Co. v. Durand*, 122 Wis. 85, 99 N. W. 603, 106 Am. St. 931.

Reading the record as thus fortified, there can be no question that the commissioners compromised a title that was then disputed and considered doubtful. The fact that they called it a redemption does not make it a technical redemption. They had authority to compromise, and their good faith is not only abundantly shown but conceded. The code, Rem. & Bal., § 3890, provides:

"The several boards of county commissioners are authorized and required . . . (6) To have the care of the county property and the management of the county funds and business, and in the name of the county to prosecute and defend all actions for and against the county, and such other powers as are or may be conferred by law."

See, also, *Prentice v. Franklin County*, 54 Wash. 587, 103 Pac. 831; *Williamson v. Snohomish County*, 64 Wash. 233, 116 Pac. 675; 11 Cyc. 606; *Mills County v. B. & M. R. Co.*, 47 Iowa 66; *Board of Com'rs of Labette County v. Elliott*, 27 Kan. 606; *Multnomah County v. Title Guarantee & Trust Co.*, 46 Ore. 523, 80 Pac. 409; *Multnomah County v. Dekum*, 51 Ore. 83, 93 Pac. 821; *Washburn County v. Thompson*, 99 Wis. 585, 75 N. W. 309. In the case last cited, in considering the power of the board of county commissioners to compromise a disputed or doubtful claim, it is said:

"It would seem to rest in sound reason and common sense, without judicial authority to support it, that the right to sue and be sued, in the conduct of corporate business, must necessarily carry with it the right to compromise and settle disputed or doubtful claims."

In each of the cases cited, the compromise was effected after a suit had been commenced. That fact, however, cannot affect the power to compromise. The controlling question must be, Was the claim or title disputed or doubtful, and did the board exercise good faith? The power is implied from the power expressly conferred to manage the county business and to prosecute and defend all actions for or against the county. It would be an unreasonable interpretation to hold that the county was powerless to compromise a claim or a title which both its governing officers and their legal advisers regarded as doubtful, until after costs had been incurred.

We think, for both of the reasons stated, the decree was right, and it is affirmed.

DUNBAR, C. J., PARKER, CROW, and CHADWICK, JJ., concur.