[No. 27504. Department One. June 29, 1939.]

THE STATE OF WASHINGTON, *on the Relation of J. L. Booth, Appellant,* v. O. U. TATRO, *as Treasurer of the City of Olympia, Respondent.*[1]

[1]Reported in 92 P. (2d) 206.

*Eggerman & Rosling,* for appellant.

*Thos. L. O'Leary,* for respondent.

STEINERT, J.—The owner of certain matured, but unpaid, local improvement district bonds of the city of Olympia brought this action in mandamus to compel the city treasurer to pay the amount of the bonds out of moneys standing to the credit of the city's local improvement revolving fund. Trial by the court resulted in findings and conclusions, based upon which a judgment dismissing the action was entered. The owner of the bonds prosecutes this appeal.

The questions presented for consideration relate to the legal status of the local improvement *revolving* fund and to the rights of owners of local improvement *district* bonds to participate in that particular fund. We shall present the facts necessary to elucidate the matters to be determined.

On July 10, 1921, the city council of Olympia passed ordinance No. 1679, entitled:

"An Ordinance creating a special fund in the City treasury of the City of Olympia, to be known as 'Local

Improvement Revolving Fund' providing for the payment into and transfer from such fund certain moneys."

The income of the fund, according to §§ 2 to 6, inclusive, of the ordinance was to be obtained exclusively from interest and savings derived from the funds of the various local improvement districts of the city. Section 7 of the ordinance, so far as it is pertinent here, reads as follows:

"Whenever any interest shall become due upon any Local Improvement bond issued by the City of Olympia, subsequent to the passage of this Ordinance or any such bond so issued after the passage of this Ordinance shall be presented for payment at maturity, and there shall be insufficient money in the particular Local Improvement Fund to pay the said interest or the said bond with interest, *the City Treasurer shall pay the said interest or said bond with interest, to the extent that there is money in said fund out of the 'Local Improvement Revolving Fund.'*" (Italics ours.)

Subsequent to the passage of the ordinance, the city council created a number of local improvement districts, each of which prior to 1927 issued a series of bonds maturing at various times between December 29, 1929, and March 8, 1938. Within a period of several months during 1938, appellant purchased a number of these bonds having an aggregate par value of $4,093.68. Each of the bonds, however, had matured at the time of its purchase by appellant.

The following recital was plainly printed, in prominent position and display, upon the face of each bond, as required by Rem. Rev. Stat., § 9405 [P. C. § 1040]:

"N. B. This bond is issued by virtue of the provisions of an Act of the Legislature of the State of Washington, entitled 'An Act relating to local improvements in cities and towns and repealing certain acts and parts of acts' approved March 17, 1911, section 52 of which act reads as follows, to-wit:

" 'Sec. 52. Neither the holder nor owner of any bond

issued under the authority of this Act shall have any claim therefor against the city [by] which the same is issued, except from special assessment made for the improvement for which such bond is issued, but his remedy in case of non-payment shall be confined to the enforcement of such assessment. A copy of this section shall be plainly written, printed or engraved on each bond so issued.' "

Another provision of the bonds expressed a promise on the part of the city to pay the face value of the bond out of the local improvement fund "and not otherwise," as required by Rem. Rev. Stat., § 9400 [P. C. § 1035]. It is important to keep in mind the distinction between the "local improvement fund" and the "local improvement revolving fund." We are here particularly concerned with the "revolving" fund.

On July 27, 1938, appellant presented his bonds to the city treasurer and demanded payment thereof out of the revolving fund. The demand was refused. At the time of the presentment, and for a long time prior thereto, the various local improvement funds, out of which appellant's bonds were payable, were, and had been, practically insolvent, while the city's revolving fund had to its credit the sum of $7,211, according to the findings of the court, or $17,211 according to appellant's contention. The exact amount of the credit, however, is not material to our present discussion.

The demand for payment having been refused, this action was brought.

The fundamental question in the case is whether the city of Olympia had the power to enact the ordinance establishing a *revolving* fund for the payment of defaulted local improvement *district* bonds. The trial court answered the question in the negative.

This court has given its answer to that question, directly and emphatically, in the case of *State ex rel. National Bank of Tacoma v. Tacoma,* 97 Wash.

190, 166 Pac. 66. In fact, the decision in that case constitutes respondent's fortress of defense on this appeal and, conversely, is appellant's principal object of attack. Our decision in the case at bar must necessarily be shaped and governed by the relevancy, weight, and effect of the former decision, viewed as a precedent.

The facts, as presented in the *Tacoma* case, were as follows: A local improvement district, created by ordinance of the city of Tacoma, issued a series of bonds to pay the cost of a street improvement. The bonds were issued in conformity with the provisions of an existing statute which required that each bond issued thereunder should provide that the principal sum named therein and the interest thereon should be payable out of the particular local improvement fund, and not otherwise; and, further, that neither the holder nor owner of any such bond should have any claim therefor against the city which issued it except from the special assessment made for the improvement for which such bond was issued, but that the remedy of the holder or owner, in case of nonpayment, should be confined to the enforcement of such assessments.

Prior to the initiation of the improvement, the city had enacted an ordinance creating a revolving fund designated "Local Improvement Surplus Fund." The ordinance provided that

"When the date has expired for the final call of bonds in any local improvement district of the city of Tacoma, and there remains outstanding any bond or bonds against said local improvement district on account of an insufficient amount of money in the local improvement district fund, then the city treasurer shall transfer from the local improvement district surplus fund to such local improvement district fund

such an amount as shall be needed to call and retire such bond or bonds."

The local improvement district *surplus* fund in that case corresponded to the local improvement *revolving* fund in this case.

A local bank purchased from the contractor a number of the bonds, relying upon the representation of a member of the city council, who was also city treasurer, that the local improvement district surplus fund was created for the express purpose of providing, and did provide, a guaranty for the payment of the bonds in the event that the special assessments levied to retire the bonds should prove insufficient.

When the bonds reached maturity, they were not paid. In the meantime, the city had, by ordinance, transferred ten thousand dollars from the local improvement district surplus fund into its general fund. Another ordinance of the city provided that, whenever any money was transferred from one fund of the city to any other of its funds, the amount of money so transferred should be returned to the original fund whenever there was a sufficient amount in the fund to which the original transfer was made.

The owner of the unpaid bonds brought an action in mandamus to compel the city to take over the bonds by using the moneys of the local improvement district surplus fund, and, if there should be insufficient moneys in that fund, then to transfer from the general fund to the surplus fund so much of the ten thousand dollars originally transferred as would be necessary to pay the bonds and accrued interest.

In affirming a judgment dismissing the action, this court said:

"As a first and fundamental proposition, it must be again asserted that, in this state, municipalities have no power except such as is expressly delegated by

the state. When that power is enlarged or when it is diminished, the power of the municipality exists and dates therefrom. *State ex rel. McMannis v. Superior Court,* 92 Wash. 360, 159 Pac. 383. The special fund bonds for the improvement under the special improvement assessment were not obligations against the city. *Soule v. Ocosta,* 49 Wash. 518, 95 Pac. 1083. 2 Page and Jones, Taxation by Assessment, §§ 1505, 1506. *The city had no power to provide for the payment of the obligations of the improvement district or the bonds to pay the obligations thereof except in the manner provided by law, and the law limited the payment to the assessments against the property.* These improvement districts are special creatures of the law and each of them must stand by itself. The only way in which a deficiency can be provided for in any one district is by another assessment in each case. The debit in one fund cannot be offset by a credit in another fund. *Thayer v. Grand Rapids,* 82 Mich. 298, 46 N. W. 228. The relator stands in the shoes of the contractor for whose benefit the bonds were issued, and has only the same rights he would have had. Hamilton, Special Assessments, § 720." (Italics ours.)

Further, near the end of the opinion, the court emphasized its prior conclusion and decision by stating that neither a single councilman nor the city council itself had authority to pass an ordinance contrary to the provisions of the statute which provided that the remedy of the bondholder in case of nonpayment should be confined to the enforcement of the assessments.

The facts in the *Tacoma* case are so nearly identical with those in the case before us that the reasoning and principles applicable to the one are equally applicable to the other. If that case is permitted to stand as authority, it must control the result of this appeal.

Appellant contends that the *Tacoma* case should not control the disposition of this case, for the following reasons: (1) that the factual conditions are distin-

guishable; (2) that the *Tacoma* case was correctly decided upon other grounds expressed in the opinion; (3) that the principles stated therein are subject to recognized qualifications; and (4) that, if the case be considered as controlling, it should be overruled.

The argument advanced by appellant upon the first of these contentions is that, in the *Tacoma* case, the money in the surplus, or revolving, fund had been transferred into the general fund of the city, and that, therefore, the action became strictly one against the general fund, which concededly was not permissible; while, in the instant case, the moneys are still in the revolving fund created by the city council, and that, therefore, the action is simply one to compel a city officer to comply with the requirements of an ordinance governing the disposition of such fund. The opinion in that case does not, either expressly or impliedly, rest upon that differential circumstance or its legal result, but declares, as a fundamental proposition, that the city had no power to provide for the payment of such obligations except in the manner provided by law, which expressly limited the payment to assessments against the property.

The second reason advanced is that the *Tacoma* case was correctly decided upon the ground that the moneys involved were, under the statute, "subject to disposition by the city as it shall see fit," and, the city having otherwise disposed of the funds, no one could complain. Appellant therefore argues that the final statement in the opinion to the effect that the council had no power to pass an ordinance contrary to the act confining the remedy of the bondholder to the enforcement of assessments should be regarded as dictum.

This argument has reference to that paragraph of the opinion appearing on page 197 and beginning with the words "And if it be conceded, as argued by ap-

pellant." Manifestly, that portion of the opinion was *arguendo*, being addressed merely to one of the contentions made by the appellant therein and simultaneously disposing of the contention by appropriate answer. The real basis of the decision, consistently maintained throughout the opinion, was that the council was without power to pass an ordinance which was contrary to the provisions of the statute.

The third reason assigned is that the broad statement in the opinion, that municipalities have no power except such as is expressly delegated by the state, is subject to the specific qualification laid down in the case of *Seattle v. Stirrat*, 55 Wash. 560, 104 Pac. 834, 24 L. R. A. (N. S.) 1275, to the effect that the power to grade streets, lay sewers or water-pipes, and assess the cost thereof upon abutting property, is not a strictly governmental or public function; and, in the exercise of such function, the city may provide by ordinance for the collection and disbursement of the revenues in any manner it deems desirable, so long as it does not contravene the general law. The *Stirrat* case and the principle on which it is based are not at all applicable to the *Tacoma* case nor to the case at bar, for the *Stirrat* case did not involve a statute expressly limiting the power of a city council to provide for the payment of obligations of an improvement district or confining a bondholder to a specific remedy.

The appellant finally contends that, if the *Tacoma* case be considered as controlling by reason of certain statements therein, it should be overruled.

This contention proceeds upon the argument (1) that the moneys here involved were derived from proprietary activities of the city and may, therefore, be disposed of as the city council sees fit; and (2) that, even if the city council did not have the power to set

up the revolving fund, nevertheless, since the city is engaged in a purely proprietary activity with reference to local improvement districts and related funds, it may be estopped by its conduct, just as a private corporation is estopped.

The answer to the first phase of the argument is found in the statute, which expressly limits the power of cities, and likewise the remedy of bondholders, with reference to payment of obligations arising out of local improvements. The legislature had the right to impose such limitations, and any relief from such restrictions must be sought from the legislature, and not from the courts.

With reference to the second phase of the argument, it must be remembered that the basis of all estoppel is that the party relying upon that doctrine must have acquired rights in innocent reliance upon the acts of the other party. *Mooney v. Mooney Co.*, 71 Wash. 258, 128 Pac. 225; *Wechner v. Dorchester*, 83 Wash. 118, 145 Pac. 197. In this case, the bonds themselves not only disclosed upon their very faces that the holders' only remedy was against the local improvement funds, but also quoted the statute which made the limitation mandatory. Appellant was not justified in believing that the provisions of the ordinance were of greater validity than those of the statute as revealed by the recitals of the bond.

Furthermore, the doctrine of estoppel cannot be applied to enable a city to make or validate a contract which is beyond the scope of its powers. 10 R. C. L. 708, § 36; 21 C. J. 1194, § 194 (e). In this case, the statute put it without the power of the city to pass an ordinance or make a contract binding it to pay the bonds in any other manner than that prescribed by the statute.

431

We are constrained to follow and give effect to the holding in the *Tacoma* case. The judgment herein is, therefore, affirmed.

BLAKE, C. J., MAIN, ROBINSON, and JEFFERS, JJ., concur.

