[No. 34084.   *En Banc.*   February 27, 1959.]

KING COUNTY EMPLOYEES' ASSOCIATION *et al., Respondents,*
v. THE STATE EMPLOYEES' RETIREMENT BOARD,
*Appellant.*[1]

[1]Reported in 336 P. (2d) 387.

The *Attorney General, Lloyd G. Baker* and *Haydn H. Hilling, Assistants*, for appellant.

*McMicken, Rupp & Schweppe* and *Mary Ellen Krug*, for respondents.

ıA. C. Van Soelen, A. L. Newbould, Marshall R. McCor-

*mick, Robert R. Hamilton,* and *Clarence M. Boyle, amici curiae.*

FINLEY, J.—The State Employees' Retirement System was created by Laws of 1947, chapter 274, p. 1168. It is a retirement system for the benefit of the employees of the state and its political subdivisions. King county qualified as an employer under the act, and its employees have become members of the State Employees' Retirement System.

The act provided for various benefits to which an employee may be entitled on his retirement from service, whether his retirement be optional, compulsory, or the result of a disability. These benefits consist of (1) an annuity; (2) a basic service pension; (3) a membership service pension; (4) a prior service pension.

For effective administrative purposes, the act created a retirement board, which consists of four state officers and three state employees. To this board is committed the administration and management of the retirement system.

In the present appeal we are concerned only with that portion of the act which relates to annuity benefits to be paid to members of the retirement system.

A member is required to make monthly contributions to establish annuity benefits which become payable upon his or her qualification for retirement. Pursuant to the authority vested in it, the original board (in 1947) adopted the 1937 standard annuity table for *male* lives as the initial basis for determination of the annuity benefits to be paid to its members upon retirement; the board decided that the same table would be used for computation of annuity benefits to both male and female employees.

In 1953, the board adopted a miscellaneous order,[2] which

---

[2]"WHEREAS, the Retirement Board is required by law to prescribe the mortality and interest basis to be used to convert a retiring member's accumulated contributions to an annuity which will become a part of his retirement allowance and

"WHEREAS, the Retirement Board originally adopted and still has in use for all members, male and female, the 1937 Standard Annuity Table for male lives computed with interest at $2\frac{1}{4}\%$ and

"WHEREAS, the mortality rates of women are lower than those of

announced that, *thereafter*, any female employee, upon her retirement, would have her annuity benefits computed on the basis of the 1937 standard annuity table for *female* lives. The order had no retroactive effect on female employees who had previously retired.

The 1937 standard annuity tables are based on the normal life expectancy of men and women at any given age. Since the standard tables reflect a longer life expectancy for women than for men, the use of the 1937 standard annuity table for *female* lives in computing the monthly annuity will result in a decrease in specific monthly annuity payments to female employees upon retirement. (However, the smaller monthly payments will, on the average, be received for a longer period of time than in the case of retired *male* employees. The net result is that, on the average, male and female employees will receive the same over-all total in annuities.)

The employees herein, feeling aggrieved by the order, requested a hearing before the retirement board. The request was granted, and the hearing held. Following the hearing, the board determined that the order was valid as applied to all female members of the system who had not retired prior to its effective date. An appeal was taken to the superior court for Thurston county, as provided by RCW 41.40.420. The superior court entered findings of fact, conclusions of law, and a judgment setting aside the board's order as it would apply to all female members of the retirement system who had joined prior to its effective date. The retirement board has appealed.

---

men resulting in the present table overstating the amount of annuities granted to women upon retirement and

"WHEREAS, it is the general practice of public retirement systems to make an equitable distinction as to sex when converting accumulated contribution to annuities

"Now THEREFORE, be it resolved, that the aforesaid Standard Annuity Table pertaining to male life values be continued in use for all men upon retirement and that effective May 1, 1953, the 1937 Standard Annuity Table pertaining to female life values with interest computed at $2\frac{1}{4}\%$ be adopted for all women retiring after said date."

Appellant's first assignment of error involves a question as to the jurisdiction of the superior court. In oral argument upon rehearing, *En Banc*, however, appellant's counsel remarked that the question of the power of the board to adopt new annuity tables from time to time was one of serious public interest, and he requested the court to treat this as an application for declaratory judgment if necessary in order to determine that point. We will assume that appellant has abandoned its first assignment of error.

Appellant's second assignment of error raises the question of the superior court's fact finding power. Appellant asserts that, under the statute (RCW 41.40.420), the superior court is an appellate court—not a trier of the facts; and that it has no power to enter any findings of fact other than those of the board. This raises an important procedural point which must be disposed of before we proceed further.

The procedure for challenging an order of the retirement board is entirely statutory. RCW 41.40.420 (as amended 1953)[3] sets out the procedure for appeal after a hearing before the board. Since the question raised is one of first impression regarding interpretation of the retirement act, we

---

[3]"Appeal from board. Within thirty days after any final decision and order by the retirement board has been communicated to the claimant, such claimant may appeal to the superior court of Thurston county and such appeal shall be heard as a case in equity, but upon such appeal only such issues of law may be raised as were raised before the board. The proceedings in every such appeal shall be informal and summary, but full opportunity to be heard upon the issues of law shall be had before judgment is pronounced. Such appeal shall be perfected by serving a notice of appeal on the executive secretary of the retirement board by personal service or by mailing a copy thereof to the said executive secretary and by filing the notice of appeal together with proof of service thereof with the clerk of the court. The service and the filing together with proof of service of a notice of appeal, all within thirty days, shall be jurisdictional. The executive secretary shall within thirty days after receipt of such notice of appeal serve and file on behalf of the retirement board notice of appearance upon the appellant or his attorney of record and such appeal shall thereupon be deemed at issue. The executive secretary shall promptly serve upon the appellant and file with the clerk of the court, a certified copy of the complete record of the hearing before the retirement board which shall, upon being so filed, become the record in such case. Appeal shall lie from the judgment of the superior court to the supreme court as in other cases."

have no decisions to serve as guides in ascertaining the extent of the power of the court in reviewing the findings of fact made by the retirement board. We must bear in mind that the legislative intent is the controlling factor. The statute expressly provides that, upon appeal, "only such issues of *law* may be raised as were raised before the board." (Italics ours.) In *In re St. Paul & Tacoma Lbr. Co.* (1941), 7 Wn. (2d) 580, 110 P. (2d) 877, this court considered the meaning of identical language found in the unemployment compensation act. The court said:

"The legislature, in passing this act, was conscious of the provisions of the workmen's compensation act, which reads:
" ' . . . but upon such appeal may raise only such issues of law or fact as were properly included in his application for rehearing, or in the complete record in the department.' Rem. Rev. Stat., § 7697 [P. C. § 3488].
and of our decisions interpreting that section. In drafting the act under consideration, it evidently patterned the appeal provisions from that of the workmen's compensation act and with the evident intent of limiting the power of the court in reviewing questions of fact under the new act, because it left out the words 'or fact' which are contained in the old act.

"Looking to the quoted portion of the act in question relative to appeals taken to the superior court, and having in mind our former decisions relative to statutes of this nature, we are constrained to hold that the administrative determination of the facts is conclusive on the court unless it be wholly without evidential support or wholly dependent upon a question of law, or clearly arbitrary or capricious. It seems certain that the court which tries the case sits as a court of equity with limited powers. The court shall review the issues of law which have been previously raised. The court shall review the power of the commissioner to act. The court shall review the facts only in so far as it is necessary to determine whether the commissioner has acted arbitrarily or capriciously, and whether he applied properly the law to those facts."

See, also, *In re Polson Lbr. & Shingle Mills* (1943), 19 Wn. (2d) 467, 143 P. (2d) 316.

In drafting the retirement act, the legislature may have patterned the appeal provisions thereof after those of the

unemployment compensation act, because the crucial words, *or fact*, contained in the workmen's compensation act, were not included in the retirement act.

■ In view of the foregoing, and in view of the fact that there was substantial evidence in the record to support the board's findings, it was error for the trial court to refuse to accept the findings of the retirement board.

We pass now to the question of whether the retirement board properly interpreted or applied the law to the facts as found.

■ It is first necessary to determine whether the retirement board has the power to adopt new mortality tables from time to time, and to make them applicable to all members who have not retired prior to the effective date of the order adopting the new tables. We believe the answer is in the affirmative.

For clarity, it is necessary to set out what is meant by an annuity under the act, and how the employees' contributions are to be handled.

An annuity is defined as the monthly "payments for life derived from accumulated contributions of a member." RCW 41.40.010(17). " 'Accumulated contributions' means the sum of all contributions for the purchase of annuities standing to the credit of a member in his individual account together with regular interest thereon." RCW 41.40-.010(14). The act creates three funds for the purpose of the internal accounting record of the retirement board: (1) an employees' savings fund; (2) a benefit account fund; and (3) an income fund. "The employees' savings fund shall be the fund in which shall be accumulated the contributions from the compensation of members for the purchase of annuities. The retirement board shall provide for the maintenance of an individual account with each member of the retirement system showing the amount of the member's contributions together with interest accumulations thereon. . . . " RCW 41.40.100 (as amended 1953). Upon retirement of a member, his accumulated contributions are transferred from the "employees' benefit fund" to the "benefit

account fund." Upon retirement for service, the member begins to draw a service retirement allowance which includes his annuity; the annuity ". . . shall be the actuarial equivalent of his accumulated contributions at the time of his retirement; . . ." RCW 41.40.190 (as amended 1953). "'Actuarial equivalent' means a benefit of equal value when computed upon the basis of such mortality and other tables as may be adopted by the retirement board." RCW 41.40.010 (24) (as amended 1957).

An actuary is a person skilled in mathematical calculations whose profession is the calculation of insurance risks and premiums. The term "'Actuarial equivalent'" through its definition as "a benefit of equal value when computed upon the basis of such mortality and other tables as may be adopted by the retirement board . . .," clearly has reference to the mathematical calculations to be made relative to a member's accumulated contributions—calculations made in order to distribute those accumulated contributions on a monthly payment basis over the remainder of his or her life. This reasonably requires the most accurate tables available; the most logical accurate tables would be those most recently adopted by the board.

RCW 41.04.050 directs the retirement board to ". . . At least once in each five-year period commencing after June 8, 1949, . . . cause an actuarial investigation to be made into the mortality, service, compensation, and other experience of the members and beneficiaries of the retirement system, and into the financial condition of the retirement system. . . ." And, further, ". . . Upon the basis of such actuarial investigation the retirement board shall adopt such tables, schedules, factors, and regulations as are deemed necessary in the light of the findings of the actuary for the proper operation of the retirement system, . . ."

We believe that it is clear—from reading the portions of the act set out in the previous pages, and especially from a reading of the whole act—that the legislature intended the annuity portion of the "benefit account fund" to be self-

sufficient. This is possible only if the mortality tables in use by the board accurately reflect the life expectancy of members when they retire. With a steadily and rapidly increasing life expectancy in this country throughout the present century, it would be impossible for the retirement board to carry out its responsibility of making effective the provisions of the act unless it could adopt new and more accurate mortality tables from time to time, and direct that they be applied to all members who retire thereafter. When the legislature gave the retirement board the responsibility for making effective the provisions of the retirement act, it simultaneously gave to the board "the authority to make all rules and regulations necessary therefor."

Respondents argue that, under *Bakenhus v. Seattle* (1956), 48 Wn. (2d) 695, 296 P. (2d) 536, they acquired a contractual right to an annuity when they commenced employment under the provisions of the statute. This is correct; but one must look to the statute to determine what that annuity is. And we have previously demonstrated that the act provides that the annuity is to be computed on the basis of the mortality tables most recently adopted prior to the retirement of a member. The member, under the plain wording of the statute, does not acquire a vested contractual right to an annuity based on the mortality table in use when the employee became a member of the retirement system; rather, the employee acquires a vested right to "a benefit of equal value" to his or her accumulated contributions, which is to be paid on a monthly basis over the remainder of his or her life. Any computations based upon mortality tables rejected by the board—because from experience and actuarial investigation they did not properly reflect the life expectancy of retiring members—would be actuarially unsound, and would not give the employees what they had contracted for.

We conclude that the board has the power to adopt new mortality tables from time to time for the purpose of endeavoring to reflect the accurate life expectancy of members when they retire. See *Birnbaum v. New York State*

*Teachers Retirement System* (1956), 4 Misc. (2d) 356, 156 N. Y. S. (2d) 620; *O'Dea v. Public School Employees' Retirement Board,* 66 Dauph. Co. Rep., Pa., 58.

■ The fact that the board, upon substantial evidence, found that there is a difference in the life expectancy of male and female employees is a sufficient basis for adopting different tables to be applied to employees according to sex.

We now turn to the question of the propriety of the board's action in adopting the mortality table involved in the case at bar. Respondents strenuously contend that new mortality tables can be adopted only in accordance with the procedure set out in RCW 41.04.050.[4] We do not agree with respondents' interpretation of that section of the act.

■ We believe that RCW 41.04.050 should not be construed as a limitation on the powers of the board; it contains no express limitation on the board's powers, and it is possible to argue that it is limiting only under the rule of express mention and implied exclusion. In *State ex rel. Becker v. Wiley* (1943), 16 Wn. (2d) 340, 133 P. (2d) 507, this court said, with respect to that rule, the following:

". . . This rule should be applied only if and when it aids in determining legislative intent. We quote from Crawford, Statutory Construction, p. 336, § 195:

---

[4]". . . The retirement board of each retirement system shall collect and keep in convenient form such data as shall be necessary for an actuarial valuation of the assets and liabilities of the retirement system, and for making an actuarial investigation into the mortality, service, compensation, and other experience of the members and beneficiaries of the retirement system. At least once in each five-year period commencing after June 8, 1949, the retirement board shall cause an actuarial investigation to be made into the mortality, service, compensation, and other experience of the members and beneficiaries of the retirement system, and into the financial condition of the retirement system. Such investigation shall be made by a qualified actuary appointed by the retirement board; shall be commenced within six months after the close of the period to be studied and shall be completed within an additional six months by the filing with the retirement board of an adequate report on the status of the retirement system. Upon the basis of such actuarial investigation the retirement board shall adopt such tables, schedules, factors, and regulations as are deemed necessary in the light of the findings of the actuary for the proper operation of the retirement system, and for making effective the provisions of this section and RCW 41.04.040 and 41.04.060. [1949 c 78 § 2; Rem. Supp. 1949 § 10726n.]"

" 'In other words, the principle is to be used only as a means of ascertaining the legislative intent where it is doubtful, and not as a means of defeating the apparent intent of the legislature.' "

We have previously stated that the apparent intent of the legislature was to have the annuity portion of the retirement allowance self-sufficient, and we have also previously called attention to the broad powers of the board to effectuate the purposes and provisions of the act. This does not give the board unlimited power to arbitrarily adopt new mortality tables. An examination of the record convinces us that the board did not act arbitrarily in adopting the mortality table presently under attack by respondents; the board heard the oral report of the actuary and acted on his oral advice. The burden of proving the choice of the table to be arbitrary rested upon respondents. They have not proved their case.

The final contention made by the respondents is that the board is estopped to change the mortality tables as to employees who became members of the retirement system prior to the effective date of the order adopting the new table. Respondents contend that they were misled to their detriment by propaganda used by the board in explaining the retirement system to prospective members. This argument does not stand on a firm foundation. When one deals with a statutory board or commission, he is presumed to know the statutory limits of its vested authority; when he deals with such statutory body without ascertaining those limits, he does so at his own peril. *State v. Northwest Magnesite Co.* (1947), 28 Wn. (2d) 1, 182 P. (2d) 643; *Strand v. State* (1943), 16 Wn. (2d) 107, 132 P. (2d) 1011; *Bennett v. Grays Harbor County* (1942), 15 Wn. (2d) 331, 130 P. (2d) 1041; *State ex rel. Department of Finance, Budget & Business v. Thurston County* (1940), 6 Wn. (2d) 633, 108 P. (2d) 828. *This is especially true when, as here, the contractual rights acquired are completely statutory.* See *State ex rel. Booth v. Tatro* (1939), 199 Wash. 421, 92 P. (2d) 206. Estoppel will never be asserted to enforce a promise which is con-

trary to the statute and to the policy thereof. *State v. Northwest Magnesite Co., supra; Bennett v. Grays Harbor County, supra.* It would clearly frustrate the legislative policy, as hereinbefore set out, to allow respondents to invoke the doctrine of estoppel in order to retire under a mortality table which the retirement board has found does not reflect accurately the life expectancy of the members of the system at the time of retirement. Respondents would then receive more in the way of annuity payments than the statute intended—at a cost of jeopardizing the financial integrity of the system. A further reason for denying the application of the doctrine of estoppel in this case is that respondents have failed to prove that "it is clearly necessary to invoke the doctrine in order to prevent manifest injustice." *State v. Northwest Magnesite Co., supra.* The record clearly shows that invoking the doctrine could lead to, rather than prevent, manifest injustice.

The retirement board correctly applied the law to the facts of this case. It follows, therefore, that the superior court erred. The judgment of the superior court should be reversed, and the order of the retirement board reinstated. It is so ordered.

WEAVER, C. J., MALLERY, HILL, DONWORTH, and ROSELLINI, JJ., concur.

OTT, J. (dissenting)—I dissent for the following reasons: (1) The majority have concluded that the doctrine of equitable estoppel is not applicable against the state because "When one deals with a statutory board or commission, he is presumed to know the statutory limits of its vested authority."

I have no quarrel with the rule, but I do not agree with the majority's application of the rule to the facts of the instant case.

The state employees' retirement act, Laws of 1947, chapter 274, p. 1168, does not provide what mortality tables are to be used in the operation of this system. This power is vested in the board. The board was acting within its authority when it approached prospective members of the system for

the purpose of soliciting their membership therein, and represented that the annuity for both sexes would be based upon the 1937 mortality table for male lives. Under the act, whether the same table would be used for determining the annuity for females was a determination solely within the discretion of the board.

The record shows that, at the time the 1937 table for male lives was adopted by the board, the 1937 table for female lives showed that their life expectancy exceeded that of males by five years. With this knowledge, the board nevertheless adopted the 1937 table for male lives and made it applicable to both sexes. The executive sececretary of the retirement board testified *that only one table was adopted for the reason that the board desired to make the retirement system more-attractive to prospective members, to simplify the explanation of the annuity benefits, and to make the administration of the system less complicated.*

Prospective members of the system were informed of the annuity benefits they would receive, and were entitled to rely upon the board's representations, since there was no prohibition in the act against the board's adopting the same mortality table for both sexes.

In *State v. Carlyon*, 166 Wash. 498, 500, 7 P. (2d) 572 (1932), the state sought a preference over general creditors by reason of certain coupons sold to the state. We said:

"Here, the state, as a creditor, is merely seeking to collect a fund which it manifestly holds in a proprietary capacity. In all such cases, the trend of our decisions has been to hold a public corporation, such as a county, which is a subdivision of the state, to *the same principles of common honesty and natural justice as would obtain between private concerns (Franklin County v. Carstens*, 68 Wash. 176, 122 Pac. 999), *and that the state itself is bound by principles of equitable estoppel, and in its business relations with individuals must not expect more favorable treatment than is fair between men.*" (Italics mine.)

Again, in *Strand v. State*, 16 Wn. (2d) 107, 117, 132 P. (2d) 1011 (1943), we said:

"It has generally been recognized by this court that the

doctrine of equitable estoppel would apply against the state when acting in its proprietary capacity. [Citing cases.]"

In the instant case, the state was acting in a proprietary capacity when it solicited membership in an annuity plan for which the member paid consideration.

Estoppel will not be asserted to enforce a contract which is contrary to the statute, but the rule is otherwise where, as here, the statute grants the authority under which the board acted when it represented that there would be no differentiation between the sexes.

The majority state that no injustice has been shown, since, although the monthly annuity payments for women will be smaller than those for men, the women will receive them for a longer period of time. Assuming, *arguendo*, that women state employees have a longer life expectancy than men in the same occupation, it does not follow that any of those who relied upon the representations of the board at the time they joined the system will live longer. The injustice lies in securing membership in the system by misrepresenting the benefits that the member would receive. In reliance thereon, respondents withdrew from their local retirement systems in order to join the state system, which was represented to be more attractive. The principles of "common honesty and natural justice" require that the state be estopped to deny the validity of the board's act.

(2) The conclusions reached by the majority are contrary to the recent decision of this court in *Eisenbacher v. Tacoma*, 53 Wn. (2d) 280, 333 P. (2d) 642 (1958), wherein we said:

" . . . An employee who accepts a job to which a pension and relief plan or system is applicable contracts for a pension and relief plan or system substantially in accord with the then existing legislation governing the same; modifications of a pension plan or system cannot be imposed on the employee unless the changes are equitable to the employee . . ."

(A) The same benefits were allowed to both sexes in accord with the existing legislation. The legislature had delegated to the board the legislative power to adopt a

mortality table which would be applicable to all beneficiaries under the act.

(B) The primary rule announced in the *Eisenbacher* decision is that any modification of a pension program must be equitable to the employee. A modification which admittedly decreases the employee's existing right to benefits, and grants no compensating benefit, cannot be said to be equitable.

(C) The conclusion of the majority in the instant case permits the pension board to impair the state's contract with certain women employees, in a manner which the *Eisenbacher* case held the legislature itself could not do. The act embodies the terms of the contract between the state and its employees, and did not reserve to the state or to its pension board the power to modify the mortality table previously adopted and accepted by employees when they joined the system. In the absence of this express reservation in the original contract (legislative act), the state is without power to change its terms.

(3) The majority conclude that the contractual rights of the respondents, as evidenced by the statute in effect at the time they joined the system, do not include the right to receive annuity benefits based upon the mortality table in effect at that time. I cannot agree.

The act does not indicate that the board's order adopting subsequent tables is to be retroactive. The majority state that, unless the orders of the board are retroactive, the annuity fund would become actuarially unsound, in view of the rising life expectancy.

Assuming, *arguendo,* that the fund is actuarially unsound, the agents of the state knew such to be the fact when they induced the respondents to join the system. Whether the fund, in fact, will be actuarially unsound can be determined only when the last person to receive benefits under the system is deceased. In this regard, a reading of the act clearly evidences that the legislature recognized the solemnity of its contractual obligations and intended that any future deficit in the fund be met by appropriation.

Further, the 1947 act, and the 1951, 1953, and 1955 amendments thereto, recognized that there were different categories of employees, with different rights, dependent upon the date of their membership in the system. The 1955 statute recognizes six categories of "original members," and defines "new member" as one who became such after April 1, 1949, except as otherwise provided in the act. RCW 41.40.010. If it were intended that an employee's contractual rights did not vest until his retirement, the legislature would not have created these special categories whereby certain benefits were preserved for "original members."

Since there is nothing in the act or the amendments thereto which would indicate a legislative intent that the changed tables were to have a retroactive effect, I am convinced that the respondents, as original members, are entitled to receive annuities computed upon the annuity table in force at the inception of their membership.

In *Birnbaum v. New York State Teachers Retirement System*, 5 N. Y. (2d) 1, 176 N. Y. S. (2d) 984 (1958), the highest appellate tribunal of the state of New York, in a majority opinion written by Chief Judge Conway reviewing a statute strikingly similar to ours, after holding that the adoption of a subsequent mortality table which diminished the annuity benefits of those who had not reached retirement was an impairment of contract and in violation of the constitutional prohibition against such impairment, held, further, that

". . . it is reasonable to construe the Education Law as authorizing (1) a periodic review by the State Teachers Retirement System of the mortality tables being used to compute annuities, (2) the adoption of new mortality tables, and (3) the use of the new mortality tables in the computation of the annuities *of only such persons as enter the system thereafter*."

I concede that the decisions of other jurisdictions are not controlling here. However, the cited New York case is based upon the application of sound judicial principles and interpretation of the sovereign state's contracts with its servants, which require the sovereign state to deal honestly and

fairly with those who faithfully serve the people. Such principles of honesty and fairness in government should be the rule and guide in the state of Washington.

For the reasons stated, the judgment should be affirmed.

FOSTER and HUNTER, JJ., concur with OTT, J.

September 1, 1959. Petition for rehearing denied.

